# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STEFANY L. SCHASSAR,      ) | |
| ) | |
| Plaintiff,      ) | |
| ) | |
| v.      ) | Case No. 12-2359-KHV-GLR |
| ) | |
| CAROLYN W. COLVIN,[1]      ) | |
| Acting Commissioner of Social Security,      ) | |
| ) | |
| Defendant.      ) | |

## REPORT AND RECOMMENDATION

## NOTICE

Within fourteen days after a party is served with a copy of this Report and Recommendation, that party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, file written objections to the Report and Recommendation. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the proposed findings of fact, conclusions of law, or the recommended disposition. If no objections are timely filed, no appellate review will be allowed by any court.

## REPORT AND PROPOSED FINDINGS

The above-captioned action comes before the undersigned magistrate judge upon referral of Plaintiff's request for review of the final decision of the Commissioner of Social Security to deny Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for former Commissioner Michael J. Astrue as defendant in this suit.

## I.      Procedural Background

Plaintiff protectively filed her application for SSI benefits on December 13, 2007, alleging a May 16, 2007 onset date of disability. Plaintiff's claim was denied initially and on reconsideration. Following a hearing, the Administrative Law Judge (ALJ) issued a decision on May 20, 2010 denying Plaintiff benefits. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. Section 1631(c)(3) of the Act, 42 U.S.C. § 1383(c), provides for judicial review of a final decision of the Commissioner.

## II.     ALJ Findings[2]

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of her application for benefits. At step two, the ALJ found Plaintiff to have "severe" impairments of degenerative disc disease with radiculopathy, degenerative joint disease, spinal stenosis, and fibromyalgia. The ALJ proceeded to step three and concluded that Plaintiff did not have an impairment or combination of impairments that meet or equal a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ then established Plaintiff's residual functional capacity (RFC) to be for a full range of sedentary work as defined in 20 CFR 416.967(a). At step four, the ALJ concluded that Plaintiff had no past relevant work. The ALJ proceeded to step five and determined that Medical-Vocational Rule 201.27 directed a finding of "not disabled."

## III.    Standard of Review

The Court reviews the Commissioner's decision to determine whether it is "free from legal error and supported by substantial evidence."[3] Substantial evidence is "such relevant evidence as

---

[2] Doc. 3–4, at 11–17; TR 10–16.

[3] *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir.2009); *see* 42 U.S.C. §§ 405(g) and 1383(c)(3).

a reasonable mind might accept as adequate to support a conclusion."[4]  It requires "more than a

scintilla, but less than a preponderance."[5]  Whether the Commissioner's decision is supported by

substantial evidence is based on the record taken as a whole.[6]  Evidence is not substantial if it is

"overwhelmed by other evidence in the record or constitutes mere conclusion."[7]  To determine if the

decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the

case, but will meticulously examine the record as a whole, including anything that may undercut or

detract from the Commissioner's findings.[8]

Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there

is evidence which might support a contrary finding will not establish error in the ALJ's

determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not

prevent an administrative agency's findings from being supported by substantial evidence.  We may

not displace the agency's choice between two fairly conflicting views, even though the court would

justifiably have made a different choice had the matter been before it de novo."[9]

IV.    **Legal Standards and Analysis**

Plaintiff bears the burden of proving disability under the Social Security Act.[10]  Plaintiff is

under a disability only if she can establish that she has a physical or mental impairment which

---

[4]*Wall*, 561 F.3d at 1052; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.2007).

[5]*Wall*, 561 F.3d at 1052; *Lax*, 489 F.3d at 1084.

[6]*Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994).

[7]*Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir.2005).

[8]*Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir.2007).

[9]*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations, quotations, and bracket omitted); *see also Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966) (same).

[10]*Wall*, 561 F.3d at 1062.

prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least 12 months.[11]  Claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education and work experience, engage in other substantial gainful work existing in the national economy.[12]

The Commissioner uses a five-step sequential process to evaluate disability.[13]  In the first three steps, the Commissioner determines (1) whether claimant has engaged in substantial gainful activity since the alleged onset, (2) whether she has severe impairment(s) and (3) whether the severity of any impairment meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).[14]  If claimant satisfies steps one, two and three, she will automatically be found disabled; if claimant satisfies steps one and two but not three, she must satisfy step four.

At step four, the ALJ must make specific findings of fact at three phases: (1) claimant's RFC, (2) the physical and mental demands of prior jobs or occupations and (3) claimant's ability to return to her past occupation given her RFC.[15]  If claimant satisfies step four, the burden shifts to the Commissioner to establish that claimant is capable of performing work in the national economy.[16]

---

[11]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir.1993) (citing 42 U.S.C. § 423(d)); *see also Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir.1985) (quoting 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)).

[12]42 U.S.C. § 1382c(a)(3)(B).

[13]20 C.F.R. § 416.920; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir.2010) (citing *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988)).

[14]20 C.F.R. § 416.920; *Williams*, 844 F.2d at 750–51.

[15]*Wilson*, 602 F.3d at 1139; *Henrie v. U.S. Dep't of HHS*, 13 F.3d 359, 361 (1993); *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996).

[16]*Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir.2005).

Plaintiff does not challenge the ALJ's determinations at steps one, two and three. However, Plaintiff challenges the ALJ's determinations at steps four and five, arguing that the ALJ erred in giving "no weight" to the opinions of Nurse Practitioner Sego; that the ALJ's credibility determination is not supported by the substantial evidence of record and does not comply with the applicable legal standards; that the ALJ's RFC is not based on the substantial evidence of record; and that the ALJ erred in relying on the Medical-Vocational Rules to find Plaintiff not disabled.

## V.    Discussion

### A.  Medical Opinion Evidence

Plaintiff argues that the ALJ erred in giving no weight to Nurse Sego's opinion; that the ALJ should have used the factors in SSR 06-3p; and that the ALJ ignored the opinions of Nurse Sego, Dr. Fishman and Dr. Vopat as to her need for a sit/stand option.

The ALJ afforded Nurse Sego's opinion "no weight" because she is a nurse practitioner and not a qualified medical source, and because Nurse Sego declined to complete an updated questionnaire as requested by Plaintiff.[17]  Nurse Sego declined to complete the form "due to the length of time it's been since [she saw the claimant]" and noted that the Questionnaire would "have to wait til [the claimant] has been seen by [her] as well as pain management."[18]

Nurse Sego is a nurse practitioner.[19]  Pursuant to the regulations, nurse practitioners are not "acceptable medical sources" and are considered "other sources."[20]  The regulations state that the agency "may" use evidence from "other sources" to show the severity of a claimant's impairments

---

[17]Doc. 3–4 at 15, Tr.14.

[18]Doc. 3–4 at 15, Tr. 14; Doc. 3–1 at 53, Tr. 403.

[19]Doc. 3–11 at 58, Tr. 408.

[20]20 C.F.R. § 416.913(a) and (d).

and how they affect his or her ability to work.[21]  Plaintiff argues that although Nurse Sego was not

an "acceptable" medical source, the ALJ was still required to weigh the opinion considering the

factors set forth in SSR 06-03p.

The purpose of SSR 06-03p is to clarify how opinions from sources who are not "acceptable

medical sources" are considered.[22]  It provides in relevant part:

> The weight to which such evidence may be entitled will vary
> according to the particular facts of the case, the source of the opinion,
> including that source's qualifications, the issue(s) that the opinion is
> about, and many other factors, as described below. . .  Although the
> factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only
> to the evaluation of medical opinions from "acceptable medical
> sources," these same factors can be applied to opinion evidence from
> "other sources."[23]

SSR 06-03p then lists six factors and states that "[n]ot every factor for weighing opinion

evidence will apply in every case" and that the "evaluation of an opinion from a medical source who

is not an 'acceptable medical source' depends on the particular facts in each case."[24]  It further

provides that the "case record should reflect the consideration of opinions from medical sources who

are not 'acceptable medical sources'" and "the adjudicator generally should explain the weight given

to opinions from these 'other sources.'"[25]

The ALJ properly considered Nurse Sego's opinion, including her treatment relationship with

Plaintiff, and indicated the weight she assigned to that opinion. The ALJ noted that Nurse Sego had

a treatment relationship with Plaintiff prior to her 2007 opinion, but in November of 2009, when

---

[21]20 C.F.R. § 416.913(d).

[22]SSR 06-03p, 2006 WL 2329939, at *1(August 9, 2006).

[23]*Id.* at *4.

[24]*Id.* at *6.

[25]*Id.*

Plaintiff requested an updated opinion, Nurse Sego indicated that she could not provide one due to the length of time it had been since she had seen Plaintiff.[26] One of the factors set forth in SSR 06-03p is "[h]ow long the source has known and how frequently the source has seen the individual."[27]

The ALJ also found that other substantial evidence in the record supported an RFC that was not as restrictive as that opined by Nurse Sego.[28] In so finding, the ALJ cited to medical evidence from Cedric Fortune, M.D., Ira Fishman, D.O., R.L. Vopat, M.D., and other medical evidence of record, which showed that Plaintiff had no manipulative limitations; a normal gait and stance; no difficulty getting up from a sitting position or climbing on and off an examination table; no difficulty walking on heels and toes; normal fine and gross motor movements; normal grip strength; and normal strength in all extremities.[29] The ALJ properly concluded that based on the evidence, Nurse Sego's opinion was not entitled to any weight.

Plaintiff further argues that Nurse Sego's opinions are consistent with the opinions of Dr. Fishman and Dr. Vopat in that she opined that Plaintiff would require a sit/stand option. But a careful review of these opinions shows that neither Dr. Fishman nor Dr. Vopat opined that Plaintiff needed a sit/stand option in order to perform work.[30] While Dr. Fishman indicated Plaintiff "will have difficulty with prolonged sitting and standing as well as prolonged walking," he did not opine that she would need to alternate sitting and standing and did not indicate how long she could sit or

---

[26]Doc. 3–11 at 53; Tr. 403.

[27]SSR 06-03p at *4.

[28]Doc. 3–4 at 13–16, Tr. 12–15.

[29]Doc. 3–4 at 15, Tr. 14, 243-46, 278-81, 373-76.

[30]Doc. 3–9 at 63, Tr. 245; Doc. 3–9 at 103, 109, Tr. 285, 291.

stand at one time.[31]  In completing a physical RFC assessment form, Dr. Vopat did not check the box

indicating that Plaintiff needed to "periodically alternate sitting and standing," and he also opined

that she could sit (with normal breaks) for a total of about 6 hours in an 8-hour workday and could

stand and/or walk (with normal breaks) for a total of at least 2 hours in an 8-hour workday.[32]  He

further opined that:

> Due to fatigue and pain issues, she would probably have problems
> w/sustained walking/standing, but no objective evidence to suggest
> she could not walk/stand for at least 15 minutes in every hour (2 hrs
> in a work day) with normal work place breaks. . . She should be
> capable of this Sedentary RFC.  No objective evidence to suggest she
> could not perform duties at this level.[33]

Accordingly, the ALJ did not err in giving no weight to Nurse Sego's opinion.  The argument that

Nurse Sego's opinion regarding the need for a sit/stand option was materially consistent with the

other opinions of record is without merit.

### B.  Credibility

The ALJ must determine residual functional capacity based upon all the relevant evidence,

including medical records, observations of treating physicians and others, and the claimant's own

description of her limitations.  As part of the residual functional capacity finding, the ALJ must

consider the credibility of Plaintiff's subjective complaints.  "Credibility determinations are

peculiarly the province of the finder of fact" and will stand when supported by substantial evidence.[34]

---

[31]Doc. 3–9 at 63, Tr. 245.

[32]Doc. 3–9 at 103, Tr. 285.

[33]Doc. 3–9 at 109, Tr. 291.

[34]*Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010).

Therefore, courts usually defer to the ALJ on matters involving witness credibility.[35]

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms:

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir.1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.[36]

In this case, the ALJ acknowledged Plaintiff's testimony and stated that she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," referencing a number of sections of the Social Security Act and its regulations.[37] The ALJ expressly discussed the requirements of SSR 96-7p,[38] that the Commissioner perform a two step evaluation, first determining whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's symptoms; and then, taking into the consideration the entire case record, evaluating the intensity, persistence, and functionally limiting effects of the symptoms to determine

---

[35] *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994); *see Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir.1990) (courts generally treat as binding ALJ credibility determinations).

[36] *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain) (further citations and quotation omitted).

[37] Doc. 3–4, at 14 (citing 20 CFR §§ 416.929 and 416.927; SSR 96-4p; SSR 96-7p, SSR 96-2p; SSR 96-6p and SSR 06-3p).

[38] SSR 96-7P, 1996 WL 374186 (July 2, 1996).

the extent to which the symptoms affect the individual's ability to do basic work activities.[39]  The

ALJ further acknowledged the requirement that whenever the claimant's claimed symptoms are not

substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the

statements, based on consideration of the entire case record.[40]

The ALJ found that "[a]fter careful consideration of the evidence," Plaintiff's "medically

determinable impairments could reasonably be expected to cause the alleged symptoms; however,

the claimant's statements concerning the intensity, persistence, and limiting effects of these

symptoms are not credible to the extent they are inconsistent with the above residual functional

capacity assessment."[41]  Plaintiff argues that the ALJ should have made a credibility determination

before establishing her RFC, citing 20 CFR § 404.1545(a)(3), SSR 96-8p and *Hardman v. Barnhart*,

362 F.3d 676, 679 (10th Cir. 2004).

In *Hardman*, the Tenth Circuit rejected the use of standard boilerplate language where the

ALJ "failed to link or connect any of the factors he recited to any evidence in the record."[42]  The

Tenth Circuit stated that it is well-established that the ALJ's credibility findings "should be closely

and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."[43]

However, the use of such boilerplate "is problematic only when it appears 'in the absence of a more

thorough analysis.'"[44]  Here, the ALJ's decision shows that after articulating her RFC finding, she

---

[39]*Id.*; *Jones v. Astrue,* 500 F. Supp. 2d 1277, 1288–89 (D. Kan. 2007).

[40]*See Jones*, 500 F. Supp. 2d at 1288–89; SSR 96-7p.

[41]Doc. 3–4 at 14, Tr. 13.

[42]*Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004).

[43]*Id.* at 678–79.

[44]*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012) (citing *Hardman*, 362 F.3d at 679).

explained the evidence she considered in making that finding and connected the credibility factors to evidence in the record.[45]   Although the ALJ's opinion recited her RFC finding before discussing credibility, there is no indication that the ALJ failed to factor in Plaintiff's credibility.[46]

Plaintiff argues that the only rationale cited by the ALJ for finding Plaintiff "generally not credible," is inconsistency with the objective medical evidence, which Plaintiff argues is not determinative.  The regulations provide in pertinent part:

> However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements.[47]

Plaintiff argues that the regulations provide that symptoms experienced can demonstrate greater severity than the objective medical evidence alone, citing 20 CFR § 416.927(c)(1) and (3), and § 416.913(d).

But the ALJ did not rely solely on the medical evidence in evaluating credibility— she also considered Plaintiff's inconsistent statements.[48]   The ALJ noted Plaintiff's allegations:

> The claimant alleged that her physical impairments preclude her from working full time on a sustained basis.  Specifically, she asserted that she is physically limited such that she cannot sit for more than 15 minutes at a time, walk for more than 10-15 minutes at a time and lift no more than 5-6 pounds.  She explained at the hearing that her said exertional limitations are caused by "constant pain" in her lower back, which sometimes travels down her legs.  She further explained that this pain also travels up and pinches her neck, which causes her

---

[45]Doc. 3–4 at 14–16, Tr. 13-15.

[46]See Jimison v. Colvin, 513 F. App'x 789, 2013 WL 1150290 at *6 (10th Cir. 2013) (unpublished).

[47]20 CFR § 416.929(c)(2).

[48]See Overton v. Astrue, No. 11-cv00669-RBJ, 2012 WL 3288945 (D. Colo. Aug. 10, 2012) (ALJ may discount subjective complaints of pain based on inconsistencies in evidence as a whole).

to have headaches.

> She also alleged that she experiences total numbness, from her elbows to her hands, upon waking in the morning and at other times of the day, such as when she has to write to fill out a job application, when she helps her children with homework, when she sits a certain way or if she has to do "anything repetitively for more than a minute or two." She further clarified that the numbness she experiences occurs more on the right arm and hand than on the left and that her treating physicians do not know what is causing the numbness.[49]

The ALJ noted that, although the medical evidence shows that Plaintiff has some back degeneration, "it is minimal with no central stenosis."[50] The ALJ also noted that, although Plaintiff allegedly experienced disabling numbness in her hands and arms, she complained of arm and hand numbness for only two days in 2006, and that "she described the pain as mild, dysfunction as minimal, prior pain and swelling as none, she was diagnosed with tendonitis or carpal tunnel, that she was prescribed Naproxin and Flexeril and discharge[d] home in stable condition."[51]

In addition to Plaintiff's inconsistent statements, the ALJ considered the medical evidence in evaluating the credibility of Plaintiff's allegations. Substantial evidence supports the ALJ's rationale for finding Plaintiff's allegations not entirely credible. The ALJ noted that, although Plaintiff alleged disabling impairments, examinations generally showed few problems with physical functioning.[52] For example, although Plaintiff alleged difficulty standing, walking, and using her hands, Dr. Fortune observed that she had good muscle tone and strength, no muscle atrophy, intact sensation, negative Tinel's sign and Phalen's sign, and she was able to perform finger to nose

---

[49]Doc. 3–4 at 14, Tr. 13.

[50]Doc. 3–4 at 14, Tr. 13.

[51]Doc. 3–4 at 15, Tr. 14 (citing Ex. 15F/22–26 at Tr. 373–77).

[52]Doc. 3–4 at 15–16, Tr. 14–15.

maneuver and heel to toe walking with no trouble.[53]  Although Plaintiff alleged significant

limitations in sitting, standing, and walking, Dr. Fortune observed that she had a normal gait and

stance, had no trouble getting up from a sitting position, was able to get on and off the examination

table, and was able to walk on heels and toes.[54]  Although Plaintiff alleged significant limitations in

the ability to sit, stand, walk, and use her hands, the ALJ noted that, while Dr. Fishman opined that

Plaintiff's physical limitations were within the light exertional level, he did not opine that she "had

any manipulative limitations."[55]  In addition to the physical examination reports from Dr. Fortune

and Dr. Fishman, the ALJ noted that Dr. Vopat, who reviewed the record, opined that Plaintiff would

be capable of performing sedentary work.[56]

Plaintiff argues that the ALJ did not do an individualized evaluation as set forth in SSR 96-

7p, and failed to consider the factors pursuant to § 416.929(c)(3).  For evaluating symptoms at step

three of the framework, courts have set out a non-exhaustive list of factors which include:

> the levels of medication and their effectiveness, the extensiveness of
> the attempts (medical or nonmedical) to obtain relief, the frequency
> of medical contacts, the nature of daily activities, subjective measures
> of credibility that are peculiarly within the judgment of the ALJ, the
> motivation of and relationship between the claimant and other
> witnesses, and the consistency or compatibility of nonmedical
> testimony with objective medical evidence.[57]

The Commissioner has promulgated regulations suggesting additional, somewhat overlapping

factors: daily activities; location, duration, frequency and intensity of symptoms; factors precipitating

---

[53]Doc. 3–4 at 15, Tr. 14 (citing Ex. 12F, Tr. 279).

[54]*Id.*

[55]Doc. 3–4 at 16, Tr. 15 (citing Ex. 2F/03).

[56]Doc. 3–4 at 15, Tr. 14, (citing Ex. 12F, Tr. 284-91).

[57]*Kepler v. Chater*, 68 F.3d 387, 391 (quoting *Thompson*, 987 F.2d at 1489); *see Luna*, 834 F.2d at 165–66.

and aggravating symptoms; type, dosage, effectiveness and side effects of medications taken to

relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and

other factors concerning limitations or restrictions resulting from symptoms.[58]

Courts have held that ALJs "should consider" these factors, but they are not required to

conduct a "formalistic factor-by-factor recitation of the evidence;" it is sufficient if the ALJ "sets

forth the specific evidence he relies on in evaluating the claimant's credibility."[59] "[C]ommon sense,

not technical perfection, is our guide."[60] Plaintiff and Defendant set forth arguments about whether

or not Plaintiff's daily activities are inconsistent with her subjective complaints. However, the ALJ

did not discuss daily activities, "let alone use them as a basis for determining her credibility" so this

argument is irrelevant.[61] The ALJ's credibility determination is supported by substantial evidence

in the record, and because "[c]redibility determinations are peculiarly the province of the finder of

fact," such determinations should not be upset when supported by substantial evidence.[62]

### C. The ALJ's RFC

The ALJ found that Plaintiff retained the RFC to perform the full range of work at the

sedentary exertional level, which is defined in 20 C.F.R. § 416.967(a) as involving:

> lifting no more than 10 pounds at a time and occasionally lifting or
> carrying articles like docket files, ledgers, and small tools. Although

---

[58]20 C.F.R. § 416.929(c)(3)(i-vii).

[59]*Jimison v. Colvin*, 513 F. App'x 789, 2013 WL 1150290 at *6 (10th Cir. 2013) (unpublished) (citing *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

[60]*Id.* (quoting *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012)).

[61]*See Jimison*, 513 F. App'x 789, 2013 WL 1150290 at *6 (unpublished) (also concluding that the ALJ's failure to discuss claimant's medication history at length does not undermine credibility determination and that the absence of medical opinion that claimant was exaggerating was not dispositive where other substantial evidence supports ALJ's credibility finding).

[62]*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citation omitted).

a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.[63]

Plaintiff claims that the ALJ erred in failing to include a restriction for above-the-shoulder activities and in failing to include a sit/stand option in her RFC. Plaintiff asserts several additional arguments based on this alleged failure to include restrictions in the RFC: 1) the ALJ failed to explain why Dr. Fortune's opinion as to above-the-shoulder restrictions was not adopted as required by SSR 96-8p; 2) because the ALJ's RFC was more restrictive than the medical opinions, the ALJ's failure to address the weight given to those opinions was prejudicial; and 3) the ALJ erred in relying on the M-V Rules because non-exertional impairments exist and the ALJ should have solicited testimony from a Vocational Expert to consider the impact of a sit/stand option. Because the ALJ did not err in failing to include an above-the-shoulder restriction or a sit/stand option, these arguments are without merit.

The failure to include limitations is not error when the limitations are not borne out by the record evidence.[64] Plaintiff claims that the ALJ erred in failing to include any limitations on above-the-shoulder activities or to explain why Dr. Fortune's opinion as to above-the-shoulder activities was not included in the RFC. SSR 96-8p states that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[65] Here, the RFC assessment does not "conflict" with the opinion of Dr. Fortune. Dr. Fortune opined:

---

[63]20 CFR § 416.967(a).

[64]*Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

[65]SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

"I think she would have trouble with prolonged above the shoulder activities."[66] Dr. Fortune did not opine how long or how often Plaintiff could perform above-the-shoulder work, nor did he indicate that prolonged above-the-shoulder work was entirely precluded.[67] He also found that examination of Plaintiff's joints "[r]evealed no enlargement, tenderness, swelling, effusion or laxity. She had normal fine and gross motor movements."[68]

Plaintiff also claims that the ALJ erred in failing to include a sit/stand option in her RFC. SSR 96-9p addresses the implications of a RFC for less than the full range of sedentary work. It provides that:

> An RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare.[69]

It further provides that:

> Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.[70]

The regulation states that "[i]n order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a

---

[66]Doc. 3–9 at 99, Tr. 281.

[67]*See Weaver v. Astrue*, No. 11-1376-JWL, 2012 WL 5412370, at *9 (D. Kan. Nov. 6, 2012) (rejecting claimant's argument that RFC assessment conflicted with medical opinion where opinion indicated claimant was "generally" limited, not "always.").

[68]Doc. 3–9 at 97, Tr. 279.

[69]SSR 96-9p, 1996 WL 374185, at *1 (July 2, 1996).

[70]*Id.* at *3.

morning break, a lunch period, and an afternoon break at approximately 2-hour intervals."[71]

As previously discussed, neither Dr. Fishman nor Dr. Vopat indicated that Plaintiff needed a sit/stand option. Although Dr. Fishman indicated Plaintiff would have difficulty with prolonged sitting, standing, and walking, he did not provide an opinion as to how long she could perform these functions and did not opine that she would be precluded from performing such functions.[72] Dr. Vopat[73] opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 2 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday, which is consistent with sedentary work.[74] Dr. Vopat specifically excluded a sit/stand option from his medical opinion.[75] Moreover, the ALJ's RFC assessment was consistent with Dr. Vopat's opinion that Plaintiff was "capable of [a] [s]edentary RFC."[76]

While the ALJ did not specify the weight she assigned to these opinions, Plaintiff cannot show she was prejudiced by such error.[77] The ALJ's RFC assessment was actually more restrictive, as work at the sedentary exertional level requires the ability to lift no more than 10 pounds at a time and Dr. Fishman opined that Plaintiff was capable of lifting and carrying 20 pounds occasionally.[78]

---

[71]*Id.* at *6.

[72]Doc. 3–9 at 63, Tr. 245.

[73]Plaintiff claims the ALJ was silent as to Dr. Vopat's opinion. Although the ALJ did not refer to Dr. Vopat by name, she cited his opinion at Doc. 3–4 at 15, Tr. 14 and explained that it supported her finding that Plaintiff could perform sedentary work (citing to "Exhibit 12F").

[74]Doc. 3–9 at 103, Tr. 285.

[75]*Id.*

[76]Doc. 3–9 at 109, Tr. 291.

[77]*See St. Anthony v. U.S. Dep't of Health & Human Servs.*, 309 F.3d 680, 691 (10th Cir. 2002) ("[T]he party challenging the action below bears the burden of establishing that the error prejudiced that party.") (citation omitted).

[78]Doc. 3–9 at 63, Tr. 245.

Plaintiff argues that the ALJ's RFC is not more restrictive than the opinions of record other than as to lifting, because the ALJ excluded the limitations opined by Dr. Fishman and Dr. Vopat. The Court has already found that the record did not support Plaintiff's arguments regarding limitations. Accordingly, Plaintiff cannot show that she was prejudiced by the ALJ's failure to articulate the weight she assigned to these opinions, and her request for reversal on this basis should be denied.[79]

Plaintiff also claims that the ALJ failed to first assess the RFC on a function-by-function basis and erroneously first assessed the exertional level, citing SSR 96-8p, ¶ 4. Plaintiff claims that the ALJ expressed the RFC solely in terms of exertional levels of work—in this case, sendentary work— contrary to the mandate of SSR 96-8p to address both exertional and nonexertional capacities of the individual. SSR 96-8p explains that assessment of RFC involves a function-by-function consideration of each work-related ability before expressing the RFC in terms of an exertional category.[80]

Although the ALJ used the phrase "sedentary work" in her RFC finding, she made the requisite function-by-function analysis in her discussion of the evidence supporting that finding.[81] For example, in support of the RFC assessment, the ALJ cited to the function-by-function RFC assessment completed by Dr. Vopat, which indicated Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for 2 hours per day, and sit for 6 hours per

---

[79]See Mounts v. Astrue, 479 F. App'x 860, 868 n.2 (10th Cir. May 9, 2012) (declining to address claimant's argument that no evidence supported an RFC limitation because the limitation imposed by the ALJ was to the claimant's benefit); Vyskocil v. Astrue, No. 11-1135-JWL, 2012 WL 2370200, at *4–*5 (D. Kan. June 22, 2012) (noting that claimant could not show prejudice to the extent the ALJ's RFC assessment was actually more restrictive than that opined by physician).

[80]See SSR 96-8p, 1996 WL 374184 (July 2, 1996).

[81]Tr. 12–15; See Reid v. Astrue, No. 11-1023-JWL, 2012 WL 426943, at *15 (D. Kan. Feb. 10, 2012) (noting that plaintiff was focusing on the ALJ's statement of his RFC in his findings, rather than focusing on the analysis upon which the ALJ based his RFC assessment.).

day, without any non-exertional limitations.[82]  The ALJ noted that while the medical evidence of record showed Plaintiff's fibromyalgia pain would "limit her walking, sitting, standing, lifting, and carrying abilities," it also showed she was capable of performing these functions as needed for sedentary work.[83]  The ALJ also noted that Dr. Fishman opined Plaintiff was capable of lifting and carrying up to 20 pounds occasionally, and that neither Dr. Fishman nor Dr. Fortune opined she had any manipulative limitations.[84]  The ALJ explained that this evidence was consistent with an ability to perform sedentary work.[85]  The Tenth Circuit has recognized that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."[86]  The Tenth Circuit has "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category."[87]  Under these circumstances, the ALJ did not fail to meet the requirements of SSR 96-8p.

### D.  Reliance on Medical-Vocational Rules

The ALJ relied on Medical-Vocation (M-V) Rule 201.27 to find Plaintiff "not disabled" and did not solicit the testimony of a Vocational Expert (VE).    Plaintiff claims that the ALJ erred in relying on the M-V Rules because non-exertional impairments exist and the ALJ should have solicited testimony of a VE to consider the impact of a sit/stand option.  However, the Court has

---

[82]Doc. 3–4 at 15, Tr. 14; Doc. 3–9 at 103–06, Tr. 285–88.

[83]Doc. 3–4 at 15, Tr. 14, 278–81, 284–91.

[84]Doc. 3–4 at 15–16, Tr. 14–15, 281, 245.

[85]*Id.*

[86]*Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

[87]*Id.* at 1288-89 (citations omitted).

already addressed Plaintiff's arguments regarding an above-the-shoulder restriction or the need for a sit/stand option. Plaintiff also argues that pain is a non-exertional impairment requiring VE testimony. The Plaintiff has fibromyalgia which the ALJ conceded was "severe."[88] The symptoms of fibromyalgia are ". . . pain all over, fatigue, disturbed sleep, stiffness . . ."[89] Pain can cause limitations that are exertional, non-exertional, or a combination of both, depending on whether or not the pain limits the ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling).[90] With regard to exertional limitations, the ALJ noted that the medical evidence of record supports a finding that claimant has fibromyalgia tender points that are likely to limit her walking, sitting, standing, lifting and carrying abilities "*above* a sedentary exertional level."[91]

Plaintiff claims that her pain constituted a nonexertional impairment, making application of the grids improper. "The grids cannot be applied conclusively if a claimant has nonexertional limitations that significantly limit [her] ability to perform the full range of work in a particular RFC category on a sustained basis."[92] "On the other hand, the grids may be applied if a claimant's nonexertional limitations do not further limit [her] ability to perform work at the applicable

---

[88]Doc. 3–4 at 13, Tr. 12.

[89]*Ward v. Apfel*, 65 F. Supp. 2d 1208, 1211 (D. Kan. 1999) (citing *Sarchet v. Chater*," 78 F.3d 305, 306 (7th Cir. 1996)); *see also Owen v. Chater*, 913 F. Supp. 1413, 1419 (D. Kan. 1995) (Fibromyalgia is an impairment that causes pain.).

[90]*See* 20 C.F.R. §416.969a.

[91]Doc. 3–4 at 15, Tr. 14 (emphasis added).

[92]*Jones v. Astrue*, 310 F. App'x 286, 290, 2009 WL 279870 (10th Cir. Feb. 6, 2009) (unpublished) (citing *Williams v. Bowen*, 844 F.2d 748, 752 (10th Cir. 1988)).

exertional level."[93]  There is no credible evidence reflecting a total inability to perform any or all of the non-exertional requirements of sedentary work.  There is no evidence that Plaintiff's pain would have a significant effect on Plaintiff's ability to do a full range of sedentary work.  In *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991), the court acknowledged that reliance on the Grids is proper where the evidence shows the claimant can perform the full range of work required in a particular category.  Here, as discussed, the evidence shows Plaintiff was so capable.  Here, no physician opined that Plaintiff had limitations that were incompatible with the requirements for sedentary work.  The ALJ did not err in relying on the Grids to find Plaintiff not disabled. Substantial evidence supports the ALJ's decision, and it should be affirmed.

## RECOMMENDATION

For the foregoing reasons, the magistrate judge recommends that the Court find that Defendant Commissioner's findings are supported by substantial evidence and affirm the decision of the Commissioner.

Respectfully submitted on this <u>3rd</u> day of June, 2014, in Kansas City, Kansas.


S/Gerald L. Rushfelt
Gerald L. Rushfelt
United States Magistrate Judge

---

[93]*Id.* (citing *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988)); *see also Timmons v. Barnhart*, 118 F. App'x 349, 353 (10th Cir. Sept. 9, 2004) (unpublished) (finding that the mere existence of an impairment does not prevent the ALJ from relying on the grids, where impairment would have no significant effect on claimant's ability to do a full range of sedentary work).